Case is Pitt-Roe et al. versus Costco Wholesale Corporation. Mr. Sandelius? Sandelius. Good morning judges and may it please the court. My name is Jacob Sandelius. I represent the appellants who are 12 local Green Bay gas stations. The issue before the court today is the continued viability of Wisconsin's Unfair Sales Act. It's not hyperbolic to say that if this court affirms the district court summary judgment that no gas station would ever be able to bring a cause of action to enforce the Unfair Sales Act. I don't understand why you say that because it seems to me maybe at a bare minimum if there were a record to show that a particular seller was selling below cost, whichever measure of cost you want to use, that would probably still be something there. We can take some guidance from what's happened in analogous areas of the law such as the Patman Act and below cost would be quite different, but we don't have that record here. And in fact, I'm not even sure if maybe it would help if you could review what concrete evidence in the record demonstrates that your clients either lost sales traceable to Costco as opposed to the general economy or consumer shifts to electric vehicles or whatever. What evidence is there that would support injury in fact for standing purposes on the part of your clients? Well, a couple of things, Your Honor. First, I think in enacting or creating a private cause of action in 1997, the Wisconsin legislature recognized that actual injury was not required. But we've seen this, I'm worried about that argument because we've seen the same type of argument with other claims. For example, Illinois has its Biometric Information Privacy Act or Protection Act, I guess BIPA, and the Illinois courts are able to entertain those cases even if there is no immediate injury on the part of the plaintiffs. But the federal courts say no because we are bound by Article III standing requirements. So even if Wisconsin wants to entertain those cases, I'm not sure a federal court can. And Judge Wood, respectfully, I'm not prepared to answer that question today because it's brief. I'm not sure we need to get there anyway if there is evidence out there. I think we always have to answer the question regarding standing. And I know you didn't remove the case here. I did not remove the case here. That issue is not brief. No, you started out in the right place, as it were. But it may be, certainly see if Judge Lee agrees, it may be that we would benefit by supplemental briefs at this point. I would be happy to file a supplemental brief on that point. But to get to your other question, what evidence of the record of actual lost sales and profit, there is evidence on the record. There's evidence of all 12, excuse me, eight of the 12 gas station owners filing declarations that were modeled exactly after the gross case that the Wisconsin Court of Appeals decided that was enough evidence for actual injury. But how do you attribute that injury to Costco? So you sell less gas or you lower the price. You sell the same amount of gas, but you sell it at a lower price. How does that link to one potential causal factor versus another, to Costco versus, let's say, the general economy? Because it's the opinion of the business owners, which are admissible in this court and found appropriate by court. What the business owners declarations say in this case is they saw Costco lowering their price and they noticed lost sales. But they also say when they see Costco lowering their price, there's a cascade of lowering of prices generally in the market, which necessarily, when they match those prices, causes them to lose profit. Do you have specific facts that supported the declaration? Those are their opinions. And are there specific facts? Yes, there's meeting notices that are filed where Costco lowers the price, other people react and match the price, and necessarily at that point, then the businesses lose profit. I think the concern that, and you can correct me if I'm wrong, because I often am, that Judge where someone is trying to attribute injury to a particular competitor, whether it be an antitrust case, Robson Patent case, or what have you, we typically see some sort of expert analysis, maybe perhaps regression analysis, or some sort of analysis of how the market works, what the supply and demand are in the market, or the influences of the market, and then experts that try to eliminate various potential causes, and then at the end say, aha, because we've eliminated everything else, it has to be Costco, right? And we don't really see that here. What we have here is we have business owners who say, when Costco lowers its price, I see a lowering in the market. We do also have some expert testimony by, I think, is it Mr. Schrenk, that, or, and Mr. Dingy, that these are competitors of Costco, right? And that I think all of the plaintiffs, at least, they are in closer proximity to Costco than the BP that is at issue, right? That is correct, and there's also expert testimony from Mr. Schrenk and Mr. Dingy that this is a zero-sum game. Gasoline sales is a zero-sum game. When Costco is lowering their prices for a reason, when they get a customer, they come from somewhere, and what I think you're getting at. What I take that, I think that seems to me kind of a manifestation of the fact that there are competitors in the same market. Correct, I think what you're getting at, Judge Lear, at least what I hope you're getting at, is that there's inconsistent findings of fact in this case. They are competitors. They're direct competitors. Costco admits that the Green Bay situation is unfair. Well, it seems to me your argument then has to be that on the one hand, we have the owners that are saying, look, I lost revenue when Costco lowered prices, and then on the other hand, we have some expert testimony that says, well, they're competitors, and so almost like by definition, what Costco does with its pricing is going to have an impact on the plaintiffs, and the question seems to me is whether those two things are enough for you to satisfy your burden to prove injury. I think they certainly are, and I think the gross case expressly held that they are enough, not only to establish injury, but to establish injury as a matter of law. But you're assuming that there's something wrong with Costco's action in lowering the prices, and the statute does not flatly prohibit anybody from lowering a price. There are procedures for sending in these notices, whose competition are you meeting, and so I just found it incomplete to say Costco lowered the price, ergo, we have suffered injury under the statute. If it was a legitimate lowering of the price, then there is no injury under the statute. And I would agree that there is evidence on the record that Costco is lowering the price illegitimately. They have to establish good faith, which they can't establish as a matter of law. There's directly on-point testimony that Costco is not acting in good faith, that their price matching was merely a what their own corporate representative testified was their primary goal in gasoline, which is to sell at the lowest price possible in order to sell Costco memberships in the first sentence. But you know, I mean, let me just pause on that for a minute. He also says we earned money on every gallon of gasoline we sold. It was not a loss leader. And you have this, I guess there's a problem that I've found with a lot of your analysis of the Kaukauna BP and also the marathon stations. You're not focusing at the consumer level. If you're a consumer who lives near the Kaukauna BP, but you happen to like shopping in the Green Bay area, you may buy your gas at a Green Bay gas station, maybe a Costco station, maybe one of your clients. Or you may buy your gas near their place of work than their residents. So I didn't find that level of analysis in there. And I found the same fallacy in the analysis of the marathon stations, where the consumer on the spot is parting with $2.45. They swipe their card, they put in the information, but what comes out of their wallet is $2.45 a gallon. That's the perspective that we need to look at. That's the As far as the marathon, I'd like to say the price being offered issue has been determined by courts in Wisconsin. It's the Chris case. It's on the record 94-4. But that's not a presidential case. That case is barely reported, and I'm not sure it's binding even in Wisconsin, much less here. And it cites cases in New Jersey, New York, and there's no case cited anywhere where it's ever been found that the price being sold is affected by third-party reward programs. There are cases. But the price being, the price is what the consumer pays on the spot. I don't think you need a judicial decision to say that, although I'm sure you can find plenty of them in antitrust. Judge Wood, I see I'm in my rebuttal time, but I'd like to answer your question. Okay, sure. So the price being offered, if the price being offered in the analogy in Arborece was actually $2.45, that's the price that customers would pay. The evidence on the record is that next to nobody uses that discount program, because you're not actually buying gas for $2.45 a gallon. You're buying gas for $2.45 a gallon plus what you're getting paid to give out your phone number. I understand that, but it doesn't mean it isn't being offered at $2.45 a gallon with these other bells and whistles. Costco doesn't offer its gas at its price. It offers its gas if you have a Costco membership in its price. So there's an add-on there too. And the regulations would say it has to be the same terms and conditions, and my contention would be it's certainly a genuinely disputed fact whether a $60 Costco membership, in exchange for everything Costco gives with it, is the exact same terms and conditions as the make-it-count program where you sell data for $0.05 off of a gallon of gas. Mr. Sundelis, the other thing that plans rely upon to say that there's questions of fact as to whether or not Costco and the BP are direct competitors are those kind of heat maps, those diagrams, right? And you say, well, because only 0.2% of all of the customers at Costco live in the vicinity of the BP at issue, that creates a question as to whether or not they're direct competitors. And I guess my question is, at what level would you concede that they were direct competitors? So what if there was 5%, 10%, 20%? Is there how would you draw that line? Judge Lee, I wouldn't draw a bright line. I would say direct competitor is, like other things we've cited in a brief, a fact-sensitive interpretation that relies on a lot of factors. It depends on if there's other gas stations near. It depends on if there's a road directly there, how much population would be needed to become a direct competitor. And it's a factual question for which there's expert testimony that at the experts say they're not direct competitors. Every other gas station. But I think he says that without any support or data. And so you represented in your brief, and I'm a little concerned, you represented that in your motion to supplement your experts strike this report that the district court ruled against without taking argument or explaining its rationale. I did, Your Honor, and that was a mistake based on what was remembered by my counsel in this case. There was some slight justification at the beginning of the hearing that he had forgotten. My position would be it still did not take into account the substantial justification or harmlessness that's necessary to be analyzed in that short, but that was a mistake on my part, Your Honor. Would you like to reserve the rest of your time for rebuttal? I would. Thank you. Mr. Heaton, is that correct? Good morning. It is always a privilege to be here. Thank you for your time today. Of course, I'm here to answer any questions you have, but I think it might be helpful than to start with the standing question. I know that Costco removed this case from Wisconsin to hear on the threat of injury. That's been the primary argument, and so why do we have to be able to even hear this case? I too have not prepared because that wasn't one of the issues raised on appeal. However, the allegations in the complaint, which as it turned out were never established as fact, alleged sufficient facts to create standing. I would have to go back, to be honest, and refresh my memory about the nuances beyond that, but there was certainly there were allegations that, again, were never proven at the summary judgment stage. If we have the actual injury, but what evidence are we permitted on a threat of injury to be able to hear the case on the federal side? Well, again, and I just confess that as to where that takes us beyond the motion to dismiss stage, I would have to refer to the law as it hadn't been raised. Certainly, the statute permits, of course, standing based either on actual injury or actual threat of injury, and those were both alleged in the complaint in this action. So it was in the proper place at the beginning when it was brought in Wisconsin. I guess if we for direct competitor. Sure. This, I believe, is a very simple and straightforward exercise. So the statute in two respects. You have the plain English meaning of direct competitor. We've submitted not just the case law that we relied on the Merriam-Webster's definition, but other definitions. The dictionaries are replete with definitions that in sum and substance define a direct competitor as two businesses who are buying for the sales of the same product from a common pool of potential customers. Common sense, right? I want the business. You want the business. We're fighting each other. Unlike, and it's direct, unlike, for example, competition, indirect competition between a retailer and a wholesaler. It's important to keep in mind this statute does prohibit imposed prohibitions and rights as to retailers, wholesalers, refiners, different levels of distribution. There could be indirect competition between a retailer and a wholesaler. There's direct competition between competing retailers. The other piece of it, and this is critically important, I think Judge Griesbach rightly focused on this. Wisconsin, unlike other states that have enacted different versions of the Model Act, used as its linchpin who can practicably purchase gas from that station. So if I'm a retailer and my customers are located, as there were hundreds in this case, within a stone's throw of a station from whom my customers can practicably purchase their gas just as easily or maybe more easily than they could from Costco, that statutory definition in 100.32 sub CJ, by using that language, practically purchase, that's how the court, that's the only way the court limits the scope of competition. It's also important to remember- So not mileage, not 22 miles, not 25 miles, five miles. Absolutely not, for a number of reasons. Number one, the language isn't there, and they certainly could have done that. Number two, the legislature rejected an amendment of the statute that would, and we put this in our brief, that would have focused on the geographic location and the similarity of being in the same geographic location. But the practically purchased language, I think, is most important because it's easy to grasp. So let's use this record as an example. Is there any dispute in this record? Could Judge Griesbach have reached any other conclusion in answering the question, were there customers of from their local Kaukana BP? No way. Of course, that's the undisputed facts. Not only do we know- So Costco puts this evidence in the record. We have customers who live near the BP, and they're buying gas from us, but they clearly would have the choice to go to the BP instead of us. Right, and you know what's interesting too? There's a huge difference between 100.32 sub CJ, where the legislature chose to define the scope of a direct competitor in terms of whether someone can practically purchase. Can a buyer practically purchase their gas from this station versus what you need to go into court and sue for millions of dollars in penalties and attorney's fees, which is, no, no, you have to show that you were either injured or you were actually threatened with injury, that the pricing that you're challenging threatened your business, right? You don't have to, in 2 CJ, you don't have to show before you price match a station, you don't have to demonstrate whether or not you have lost sales or would lose sales. That's really important. Legislature could have easily defined existing price of a competitor in CJ by saying, and whose pricing posed a threat of injury or injured you, right? They did not do that for practical reasons. So, Shane, let me ask you this. So, if two firms are competitors, they would be competing in the same product market, in the same geographic market. Is that correct? Yes, but geographic market is quite, different minds could differ about what that is. I understand, that's where experts make their money, right? Yes. And so, here, Costco's contention is that Costco and the Cocona BP, I think that's how you pronounce it, were competitors because they sold at least in the same relevant geographic market. That and, not just that, your honor, and this is so important, because it's undisputed that hundreds of their customers can practically purchase from their BP. And let's not forget, it's undisputed in this record, these Cocona folks complained. When they saw that they were getting outpriced, they called. So, there's no question in this case. So, I guess my question is kind of along the lines of what I was asking Mr. Sandelius. So, the plaintiffs here, right, they own gas stations that are much closer in proximity to the Bellevue Costco than the BP. Is that correct? Yes. Okay. And so, would you define them also as competitors of the Bellevue Costco because they sell the same product? I guess I'm kind of, I'm taking the definition that's typically used in antitrust cases, I suppose. They sell the same product and then they're in the same relevant geographic market as Costco itself defined, right? Absolutely. And so, it doesn't mean they were ever injured or threatened with injury. Indeed, we knew, Your Honor, we had a strong suspicion at the outset of this case because of the business model that we have. There would be very few stations that would individually have enough, if any, Costco members as customers who would also on an alleged violation date, alleged violation date, decided to buy their gas elsewhere because of the reduced price, right? So, the fact that you're a direct competitor of that for price matching purposes does not in any way, shape, or form mean that any one gas station in the community was ever injured or ever threatened. Can we pause there? I'm still interested in a clean definition of injury because I guess my going in assumption is that injury must mean something more than just being underpriced, that you lose a sale to a competitor because that's competition. So, there has to be something that the statute prohibits or disfavors going on that must be linked to that lost sale. Absolutely. And don't take my comments this morning for a moment to suggest we think that they've established a violation of the act. So, specifically, 100.30 sub 5M, that's the private cause of action. That says a plaintiff has to be injured or threatened with injury as a result of a violation of the act. And so, suppose the violation of the act is that Costco didn't mail in the daily reports of whose price they were matching. I don't think so because ultimately the record is very clear on this. For each of the alleged violation dates, there either is a notice of meeting competition or there's a comp log, which is another business record. What this case comes down to is their challenge to the propriety of price matching against Calcana and price matching against Marathon on those issues. On the ground that they're not really competitors. Because they say if it's okay with Calcana, then why not a BP station in Houston, Texas? Yeah. Well, that would take the practicably out of practically purchased, wouldn't it? This court and the courts in Wisconsin and the state court system, of course, can reject interpretations of a statute that are absurd and lead to absurd results. That's not the case here. The legislature purposefully chose, are these competitors from whom the customers can practically purchase? Every day, today included, every day, those hundreds of customers, 260- 236 Costco members with the Calcana address? 260 within a two-mile radius who actually buy gas from Costco. 538 within a two-mile radius who buy other stuff and could very easily buy gas, and we hope they do someday. How many is required? Let's say there's one Costco member around the Calcana BP that buys gas from Costco. Would you say that that would support a summary judgment for Costco on those facts, or is the practicably able to buy, does that inherently require some sort of factual finding? Honestly, that would require a fix by the legislature, but let me answer it this way very directly. No, it wouldn't. The statute says the buyer, a buyer can practically purchase, but this court fortunately is not presented with that. This court is presented with hundreds of customers who undisputably could. But the argument that the plaintiffs are making is that 0.2% isn't enough, that there has to be some meaningful, I would put, to put words in their mouth, some meaningful right across demand there between the BP and the Costco. And so I was just looking for some guidance as to at what point can a court say as a matter of law that 0.2% is enough? There's a decision we cited, I believe it's the Gross decision, that specifically says there is no threshold market share that's required, and the statute doesn't require it. And if that is something that was a real world issue, the legislature could be petitioned to modify it. But again, I can't emphasize enough, any statute could potentially be ambiguous in this setting. Gee, in this setting, does this encompass these folks? And it's not necessarily ambiguous in another setting like here, where there are hundreds of customers indisputable. And even if there were ambiguity, which I don't believe there is as to these facts that are undisputed, even if there were, of course, this is a penal statute. And those ambiguities would have to be resolved in favor of Costco, also as a statute in derogation of the common law. Well, but doesn't that bring to mind what Judge Wood was asking Mrs. Sandelis about, the customer level inquiry? So here, we know that there's 200 or whatever customers of the Bellevue Costco that live in the kind of poly area that buy gas from Costco, right? Yes. But there hasn't really been any inquiry as to why, right, they buy gas from Costco. It could be that they work near Costco. It could be that they have relatives that they visit every weekend, right? And so on the way, they fill up at Costco. But there isn't any sort of, at least I couldn't find, any sort of factual indication or analysis as to why those customers chose to buy gas at Costco. Maybe they do just because that's when they do their Costco shopping. And it really doesn't matter. Because what we do know is Costco, the Bellevue Costco, has hundreds of customers who could, can practically purchase their gas from the CACANA BP. And on top of that, we have the customer complaints, all of which is undisputed. So yes, the consumer, there is no requirement to show why consumers would do what they do. Statute doesn't say that. Statute says, ask one question, can they or can they not practically purchase their gas from their neighborhood CACANA BP? Of course they can. I do have a question then. Looking at that statute, the CACANA BP and Costco, how, is it not a fact question for the jury to decide that Costco and this BP, 22 miles away, are direct competitors? Sure. And that's the blessing of what the legislature has given us. It's rendered that can the customers practically purchase? Of course, no one could say that 200, 500 customers clustered within a stone's throw of their neighborhood BP could not purchase it. It can't be said. Judge Griswold got it right, Your Honor. And that is, and furthermore, that's the whole premise for Costco's business model, right? If anyone who's a Costco member knows, you go there for that destination. Some people, Judge Lee, like you said, might just buy gas. Some people might buy gas when they're there to purchase other products. But we know some, I ran out of time. You can go ahead, finish that thought. But some customers cared enough about, from CACANA, cared enough about Costco's commitment to providing the most, the lowest lawful price for their products to call and say, what's going on here? Why am I, why are you guys getting outpriced by my neighborhood? Thank you, Mr. Thank you. Mr. Sandelius, I'll give you two minutes on rebuttal. Thank you. There's two things I want to address briefly. First is the practically purchased portion of it. That is not how direct competitor is defined in the statute. The statute reads, to match there has to be a direct competitor and, and being the important word, from whom they can practically purchase. Direct competitor is different. It's also not true to say there's no evidence in the record regarding practically purchasing. Our expert says that someone who lives in CACANA can't practically purchase gas from Costco. They're in a different market when they do so. In order for them to draw- What would be your working definition of direct competitor is that it's a term of art, and that gets to my second point, is that you asked for a definition from opposing counsel. You didn't get one. We don't disagree with the definition that Judge Griesbach said. Judge Griesbach, citing the Go America case, said direct competitor is someone who buys and sells goods in the same geographic market. That's the question of law. We don't disagree with that. That's what a jury would be instructed in this case. Are Green Bay and CACANA selling goods in the same- That's the definition of competitor. What's your definition of the phrasing direct competitor? Just that. Buying and selling goods in the same- So there's no distinction between a competitor and a direct competitor. Well, not relevant in this case. I would say direct is what counsel was talking about for wholesalers and retailers. But my definition would be the same as Judge Griesbach's. But there's expert testimony in this case that they're not the same geographic market. That's the application of- How can the expert testify that if there is undisputed evidence that people regularly buy their gasoline over that number of miles, so to speak? I would disagree with regularly. I think it's 0.57 times a day. We don't know those people live in CACANA just because they signed up with a Costco, CANA there. They may have moved and not changed it. And frankly, when I drove here- But you don't have any evidence to say they're not from CACANA. No, but there's no evidence that they are. That's just that- Well, there is evidence that they are. That's their address. I see that I'm out of time. Thank you. Thank you, counsel. We'll take the case under advisement and we may be issuing a separate order for supplemental briefings. So stay tuned. Our next case-